Colcock, J.
delivered the opinion of the Court. The first ground for consideration is, whether ■an information in the nature of a quo vjarranto will lie against a corporation as a body, at the relation of a private person in the name of the Attorney General. It is clear that the Court of General Sessions does possess a superintending authority over all civil corporations, by an act of Assembly passed in 173], sect. 31; all the powers of the King’s Bench, are vested in this Court; and it is laid down in 1st Blackstone, p. *40 481, that this power is vested in the King, and by him exercised in his Court of King’s Bench; and although it has been said that this power is not vested in the King, as visiter of these corporations, yet it has never been doubted but that the Court of King’s Bench, from its general superintending authority, where-other jurisdictions are deficient, has power to regulate and restrain the proceedings of all corporations. The mode of proceeding by information, in the nature of a quo warranto succeeded to the old writ of quo warranto, which fell into disuse with the Court of Eyre, and has always been recognized as a common law proceeding. 3d Burrows, 1817. The statute of Anne, as well as that of 4 and 5 of William and Mary, (which latter is not of force in this State,) gave this remedy to individuals; the former in cases relating to corporate rights, the latter generally for all misdemeanors. Although it appear to admit of some doubt whether an information in nature of a quo warranto, at the instance of a particular individual, will lie against a corporation as a body, yet there can be none that such a proceeding by the Attorney General, in behalf of the State, will lie, 2 Shower, p. 275; Salk, p. 374; 3 Burrows, p. 1812; 5 Mass. Rep. p. 30; 8th Modern, p. 114; Lord Raymond. I am induced to consider the case before us as one of this character. Two objections have been urged against this: first, that the' information is signed by the Attorney General, at the request *41 of John Ravenell; and secondly, that it is a matter of individual concern, and there is a private • remedy. As to first, the words “ at the request, &c.” may be rejected as surplusage. 1 Burrows, p. 407. It may be considered as a mere memorandum of the name of the person who gave the. first information to the Attorney General; for in all such cases it is clear that this public officer must be informed by some individuals of the usurpation of the rights of government. It cannot be conceived that he officially would know of every encroachment which might be made by corporations on the prerogatives of government. The information does not in the body of it profess to be ex relatione John Ravenell, and this.is always the case when the proceeding is for an individual injury. But does it appear that this is for an individual injury? I conceive it does not. On, the contrary, it is a matter of general concern to all the corporators of the city. The complaint is, that the City Council has passed an ordinance unlawfully imposing a tax on bonds. Can this be said to affect Mr. Ravenell alone ? If the charge be well founded, is it not a usurpation of the power of the State ? It is worthy of remark, that in two of the cases above quoted, The King vs. the City of London, and The King vs. The Mayor of Genterden, this was the ground of complaint; and in the latter case, among the reasons assigned for granting the rule, is one which may be considered as a satisfactory an *42 swer to the objection, that the individual had a remedy by action at law. “ The Court directed ‘ \ J ' that this matter should bé tried upon information, and that for two reasons. The one, because a single person might not be able to contest this matter in an action against the whole corporation; and the other, because if a verdict should pass for or against such single person, it would not end the contest which might happen with the rest.” 8th Modern Reports, 114. The case then is considered as a public prosecution, in the name of the Attorney General, in behalf of the State. In determining the second ground, it . will be necessary to recur to the act of incorporation, the 4th clause of which enacts, among' other things, “ That the said City Council shall also'be vested with full power and authority to make, such assessments on the inhabitants of Charleston, or those who hold taxable property within the same, for the safety, convenience, benefit, and advantáge of the said city, as shall appear to thein expedient.” In pursuance of which authority, the City Council, on the 26th February, 18! 6, passed the ordinance imposing the tax complained of. It is said that the clause of the act of incorporation does not give the city the power to tax bonds yielding interest, because, 1. They are not considered as property. 2. If so considered, they cannot be called taxable property, within the meaning of the legislature; and, a corporation cannot take any pówer by im *43 plication; but whenever their authority is questioned they must show it clearly. Upon the first point in this ground, there can be little doubt. Whatever opinion may have been entertained in relation to choses in action, it is now a received one that they are considered as property. A devise of all testators’ goods will pass. Bonds 4, Bacon, 353. It was contended that they are not to be considered as taxable, because at the time of the incorporation of the city they were not regarded in that light, and because there is no direct benefit derived from the corporation to bonds. The act is unquestionably prospective in its operation; and this is to be collected both from its language and design: from its language, because ■ it says they are vested with power to make such assessments as shall appear to them expedient. From its design, which was to vest them with full powers to regulate the police of the city, for the safety, convenience, benefit, and advantage of its inhabitants. It is presumed that the principle of taxation has been misconceived. It is not necessary to show a direct benefit resulting from the protection of government to the particular, article taxed; but the right to tax an individual results from the general protection afforded to himself and property. Vattel, p. 150. And a rule established in all well regulated communities is, that the citizens . should contribute towards the support of government, as nearly as possible in proportion to their *44 respective abilities. The sources of revenue to individuals are rent, profit, and wages, and every ^ax mus^ he finally paid from one or all three of these' sorts of revenue. Smith's Wealth of Nations, Vol. 3, 255; do. 3 Vol. 216, 247, 248. A profit on bonds, then, as well as a profit on money, is a legitimate subject of taxation. It has been so considered by most of the European governments, and by our state. But suppose a case, (and it cannot be considered as an extreme one, for it is common in our state;) a man converts all his property into bonds: would it be just that he should enjoy the -benefits resulting from the police of the city, and not contribute towards its support ? I presume not. 1 am of opinion, then, that the act of incorporation is prospective in its operation, and that bonds are taxable property within the meaning and spirit of it; and that therefore the City Council had a right to pass the ordinance in question. As to the third ground, I shall give no opinion on it, because it does not appear to arise in the information, and the counsel did not appear to conceive it material.
ü?“taxable
Ravenell and Toomer in support of the motion.
Gadsden, contra.
The other Judges concurred.